IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:14-CV-40-FL

JIMMIE ECHOLS,                              )
                                            )
        Plaintiff,                          )
                                            )       **ORDER AND MEMORANDUM**
                v.                          )       **AND RECOMMENDATION**
                                            )
BRANCH BANKING AND TRUST,                   )
                                            )
        Defendant.                          )

This matter is before the court on Defendant Branch Banking and Trust's ("BB&T") motion

to dismiss the complaint of *pro se* Plaintiff Jimmie Echols ("Plaintiff") for lack of subject matter

jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [DE-30]. Also pending before the

court are three motions to amend the complaint filed by Plaintiff. [DE-37, -43, -44]. All responsive

briefing is complete, and the pending motions are ripe for adjudication. These motions were referred

to the undersigned and are considered here for disposition or as a recommendation to the District

Court, as appropriate. *See* 28 U.S.C. § 636(b)(1)(A), (B); *see also* Local Civil Rule 72.3(c). For the

reasons set forth below, Plaintiff's first motion to amend [DE-37] is granted in part and denied in

part, and Plaintiff's second and third motions to amend [DE-43, -44] are denied. It is recommended

that Defendant's motion to dismiss [DE-30] be granted.

## I. BACKGROUND

On July 1, 2014, Plaintiff filed a *pro se* complaint in this court, naming BB&T as a tortfeasor

along with several other individuals. [DE-1]. On August 27, 2014, Plaintiff filed a motion for

miscellaneous relief, seeking a waiver of the requirement of local counsel and seeking an extension

of time to amend the complaint. [DE-5]. In a text order on August 28, 2014, Judge Flanagan denied Plaintiff's motion seeking a waiver of the requirement of local counsel. On August 29, 2014, the undersigned entered an order directing Plaintiff to supplement the complaint by specifying his full name and properly identifying all parties by September 19, 2014. [DE-10]. On September 23, 2014, Judge Flanagan entered a text order warning Plaintiff that if the order on supplementation was not adhered to by October 15, 2014, the action would be dismissed. On October 15, 2014, Plaintiff filed a supplemental complaint naming BB&T as the sole defendant. [DE-16]. On October 28, 2014, Plaintiff filed a motion for extension of time to effect service. [DE-20]. On November 7, 2014, Judge Flanagan granted the order, allowing Plaintiff until December 15, 2014 to serve Defendant with the summons and complaint and directing that the action proceed on Plaintiff's supplemental complaint. [DE-20].

On December 4, 2014, Plaintiff filed a motion for entry of default [DE-21], to which Defendant responded in opposition [DE-25], Plaintiff filed a reply [DE-39], and the Clerk of Court denied in an order on February 20, 2015 [DE-42]. On December 8, 2014, Defendant filed an answer [DE-29], and the instant motion to dismiss [DE-30]. On January 2, 2015, Plaintiff filed the first motion to amend the complaint [DE-37], and a response in opposition to Defendant's motion to dismiss [DE-38]. On January 26, 2015, Defendant filed a memorandum in opposition to Plaintiff's first motion to amend [DE-40]. On February 25, 2015, Plaintiff filed his second motion to amend the complaint [DE-43], his third motion to amend the complaint [DE-44], and a reply to Defendant's memorandum in opposition to the first motion to amend [DE-45]. On February 27, 2014, Plaintiff filed a motion for leave to file his previously-docketed reply out of time [DE-46], which Judge Flanagan granted in an order on March 2, 2015 [DE-47]. On March 16, 2015, Defendant filed a

2

response in opposition to Plaintiff's second and third motions to amend the complaint [DE-49]. On April 9, 2015, Plaintiff filed a motion for extension of time to file a reply as to the second and third motions to amend the complaint [DE-50], which Judge Flanagan granted on April 13, 2015 [DE-51]. On April 24, 2015, Plaintiff filed a reply to Defendant's response to Plaintiff's second and third motions to amend the complaint [DE-52].

## II. FACTUAL ALLEGATIONS

The following factual summary is taken from Plaintiff's supplemental complaint [DE-16]. On July 12, 2002, Plaintiff and others entered into an agreement, in which Plaintiff executed a promissory note secured by a deed of trust in favor of BB&T. *Id.* at 2 ¶ 5. Plaintiff served as guarantor on the loan and was part owner of the real property that served as collateral for the loan and the personal property contained on the premises. *Id.* at 2 ¶ 5, 3 ¶ 6. In 2010, Defendant claimed Plaintiff defaulted on the promissory note and foreclosed on the real property. *Id.* at 2 ¶ 5.

On June 21, 2011, the Clerk of Superior Court of Bertie County, North Carolina issued an Order of Possession of the foreclosed property in favor of Defendant. *Id.* at 2 ¶ 5, 3 ¶ 9. On July 12, 2011, Deputy Sheriff J. E. Bowen executed the order of possession on behalf of Sheriff John Holley, and filed the signed return of service certifying that Deputy Bowen had served the Plaintiff. *Id.* at 3 ¶¶ 6, 9. According to Plaintiff, the sheriff "did not remove the tenant's personal property as required by the court Order of Possession, nor did any agent sign a statement that the Plaintiff's property remain on the premises now in possession by Defendant." *Id.* at 4 ¶ 10. Plaintiff appealed the foreclosure to Superior Court and to the North Carolina Court of Appeals, and both courts affirmed the foreclosure. *Id.* at 2 ¶ 5, 3 ¶ 7.

Plaintiff asserts the following claims: (1) conversion, (2) fraud on the court, (3) absence of

3

de novo hearing, (4) North Carolina statutory violations, (5) breach of contract, (6) breach of contract under modification of agreement, (7) conflict of interest, and (8) violation of due process by failure to provide discovery. *Id.* at 4-7 ¶¶ 12-21.

## III. ANALYSIS

### A. Standard of Review

#### 1. Fed. R. Civ. P. 12(b)(1)–Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Whether subject matter jurisdiction exists is a threshold question that must be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does, in fact, exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted).

#### 2. Fed. R. Civ. P. 12(b)(6)–Failure to State a Claim upon which Relief can be Granted

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has also opined that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 93 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A pro se complaint involving civil rights issues must be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts setting forth a cognizable claim under federal law. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that the court is not required to "conjure up questions never squarely presented.").

5

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, this rule is subject to several exceptions. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Fourth Circuit has "note[d] that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (1989) (citing 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977)); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

### 3.    Fed. R. Civ. P. 15–Amended Pleadings

Rule 15 provides that a party may amend its pleading once as a matter of course within twenty-one days after service, or, if the pleading requires a response, within twenty-one days after service of the response or service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its pleading only with the written consent of the opposing party or with leave of court.[1] Fed. R. Civ. P. 15(a)(2). In making a Rule 15(a) determination, the following standard is to be employed by a court:

---

[1] At the time Plaintiff filed the instant motion no scheduling order setting forth case deadlines, including those governing amendment and joinder, had been entered in this case. Thus, Rule 15 governs the analysis. *See Nourisan Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008).

6

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). Thus, as a general rule, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis & citation omitted). A court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss under Rule 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citations omitted). Whether to grant leave to amend a complaint or answer is committed to the sound discretion of the trial court. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

## IV. DISCUSSION

A brief summary of the pending motions will be instructive to the discussion below. In the motion to dismiss, Defendant argues that Plaintiff's supplemental complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff has failed to plead an amount in controversy and because the *Rooker-Feldman* doctrine bars the court's exercise of jurisdiction over Plaintiff's second, third, fourth, fifth, sixth, and seventh claims. Def.'s Mem. [DE-31] at 3-6. Additionally, Defendant argues that Plaintiff's first, fifth, sixth, and eighth claims should be dismissed for failure to state a claim for which relief can be granted. *Id.* at 6-9.

7

In Plaintiff's first motion to amend, Plaintiff filed a proposed amended supplemental complaint, along with several other exhibits. First Mot. to Amend [DE-37]; First Prop. Am. Suppl. Compl. [DE-37-1]. The only changes in the first proposed amended supplemental complaint are the addition of NC Atlas NCISPE in the case caption as an additional defendant, and the addition of damages "in excess of $75,000.00" in the requested relief. First Prop. Am. Suppl. Compl. [DE-37-1] at 1,7. In Plaintiff's second motion to amend, Plaintiff asks the court "to allow him to join as a party Atlas NC I SPE, LLC." Pl.'s Second Mot. to Amend [DE-43] at 1. Plaintiff attaches a second proposed amended supplemental complaint, in which he includes several factual allegations against Atlas NC I SPE, LLC ("Atlas"), a factually expanded first claim for conversion, and two additional claims: a ninth claim for trespass to chattels and a tenth claim for lack of jurisdiction and lack of standing. Second Prop. Am. Supp. Compl. [DE-43-1]. In Plaintiff's third motion to amend, filed the same day as the second motion to amend, Plaintiff states that he seeks to amend his complaint "by reciting facts and elements of conversion in Count I and Count IX which is trespass to chattel. Count X is added to reflect lack of standing and lack of jurisdiction at the Superior Court of Bertie County before Judge Cy Grant." Pl.'s Third Mot. to Amend [DE-44].

## A.     Motion to Dismiss–Subject Matter Jurisdiction

### 1.     Amount in Controversy

In its motion to dismiss, Defendant argues that Plaintiff's case should be dismissed for lack of subject matter jurisdiction because Plaintiff has not shown the requisite amount in controversy pursuant to 28 U.S.C. § 1332. Def.'s Mem. [DE-31] at 3-5. Specifically, Defendant argues that Plaintiff has failed to allege any amount in controversy and, despite the fact that Plaintiff's supplemental complaint lists items of personal property allegedly wrongfully retained by Defendant,

8

Plaintiff does not assign value to these items of personal property. *Id.* at 4. Further, while Plaintiff asks the court to reverse the foreclosure and return the seized real property to Plaintiff, nowhere is an amount specifically alleged. *Id.* at 4-5. In response, Plaintiff argues that "the face of the complaint implies that damages are in excess of $75,000.00," and further, Plaintiff should be allowed to amend the complaint to supply the missing jurisdictional amount. Pl.'s Resp. [DE-38] at 2-4.

In Plaintiff's first motion to amend, he seeks to add to his requested relief damages "in excess of $75,000.00." First Prop. Am. Suppl. Compl. [DE-37-1] at 7. Defendant opposes Plaintiff's motion to amend, arguing that the inclusion of a perfunctory statement that the damages sought are in excess of $75,000.00 in Plaintiff's first proposed amended supplemental complaint does not cure Plaintiff's failure to properly plead the amount in controversy. Def.'s Resp. [DE-40] at 5-7. In response, Plaintiff argues that his amendment should be allowed because it is neither futile nor prejudicial. Pl.'s Reply [DE-45] at 1. Further, "[t]o add credibility to his claim of diversity, Plaintiff has attached a price quote for the cost of purchasing a television antenna prepared by Dielectric Corporation which projects the cost of replacement at $73,999.20 which does not include the costs of installation." *Id.* at 2; TV Antenna Price Quote [DE-45-1] at 1-11.

Before addressing Defendant's motion to dismiss for lack of subject matter jurisdiction as to the amount in controversy, the undersigned will address Plaintiff's first motion to amend [DE-37]. Taking into account Rule 15's directive that courts "should freely give leave" to amend and considering the general rule that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile," the undersigned determines that Plaintiff's motion to amend to add "in excess of $75,000.00" to the requested relief should be granted. Fed. R. Civ.

9

P. 15(a)(2); *Edwards*, 178 F.3d at 242 (emphasis & citation omitted). The amendment does not appear to be in bad faith, nor is it prejudicial to Defendant or futile where is simply adds a dollar amount to the damages already requested in the Supplemental Complaint. Accordingly, Plaintiff's first motion to amend [DE-37] to add "in excess of $75,000.00" to the requested relief is granted.[2]

Federal subject matter jurisdiction lies where a claim asserted by plaintiff raises a federal question or where there is diversity of citizenship between plaintiff and defendant. 28 U.S.C. §§ 1331, 1332. Federal question subject matter jurisdiction exists where plaintiff alleges a violation of the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction based on diversity of citizenship requires the plaintiff to demonstrate that none of the defendants have citizenship in the same state as plaintiff and the amount in controversy exceeds $ 75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

The court is mindful of the latitude extended to pleadings of *pro se* litigants. *See White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). It is well established that when the challenged pleading is from a *pro se* plaintiff, the pleading should be construed liberally and held to a standard less stringent than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Despite this leeway given to *pro se* litigants, it remains their responsibility to adequately demonstrate that subject matter jurisdiction exists. *See Weller*, 901 F.2d at 390-91. Additionally, while the *pro se* plaintiff's allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff, the burden remains on the plaintiff to prove that federal jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (holding "the party who

---

[2] The undersigned will address Plaintiff's request to add Atlas as a party in the first motion to amend below, along with Plaintiff's second motion to amend [DE-43], which also seeks to add Atlas as an additional party.

10

seeks the exercise of jurisdiction in his favor . . . . must allege in his pleadings the facts essential to show jurisdiction").

In the supplemental complaint, Plaintiff states the following as to the court's jurisdiction:

> This court has subject matter jurisdiction based on diversity of citizenship, 28 USC Section 1332 and fourteenth amendment of the U.S. Constitution. Plaintiff is a citizen of Minnesota and Defendant's principal place of business [is] located in Winston-Salem, North Carolina. This court has subject matter jurisdiction of a federal question.

Suppl. Compl. [DE-16] at 2 ¶ 3. Plaintiff also alleges that his personal property wrongfully retained by Defendant consisted of "Radio transmitters (3); T.V. transmitter (1); Satellite dishes (3); Board processors; Microphones (more than 5); Audio players (5-10); Microphone stands; TV Monitors (4+); Audio speakers (4+)." *Id.* at 4 ¶ 12. Further, Plaintiff seeks the following relief: "damages for losses of personal property including losses from inability to operate the radio and television station, and interference with property rights."[3] *Id.* at 7 ¶ 22. Additionally, as discussed above, the court has granted Plaintiff's First Motion to Amend to the extent that Plaintiff seeks to add "in excess of $75,000.00" to his requested relief.

As an initial matter, despite Plaintiff's conclusory statement that the "court has subject matter jurisdiction of a federal question," Plaintiff has failed to allege any violations of the "Constitution, laws, or treaties of the United States" to give rise to federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The only claim which may be construed as involving a federal question is Plaintiff's eighth claim, which states "Defendant violated due process of law by not

---

[3] Further supporting his damages claim, Plaintiff also requests "that this court will make the foreclosure obtained by the Defendant null and void, returning the seized real property to the Plaintiff." Suppl. Compl. [DE-16] at 7 ¶ 22. While no specific value is assigned to the real property, the supplemental complaint does provide that the promissory note secured by the real property was for $150,000.00. *Id.* at 5 ¶ 14. This lends further support to Plaintiff's assertion that he has properly plead the required amount in controversy.

11

providing Plaintiff with discovery of documents. Although, Plaintiff requested discovery, discovery was not addressed or was ignored by the Honorable Grant of North Carolina Superior Court." Suppl. Compl. [DE-16] at 7 ¶ 21. Plaintiff's other claims, however, do not involve federal law in any form. *See id.* at 4-6 ¶¶ 12-20. Regardless, as discussed below, the undersigned determines that federal subject matter jurisdiction exists on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Defendant's primary argument as to the lack of subject matter jurisdiction is that Plaintiff has failed to properly plead the requisite amount in controversy.[4] Def.'s Mem. [DE-31] at 3-5. "In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (2010) (quoting *St. Paul. Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Indeed, "Defendants . . . seeking dismissal of diversity actions for lack of a sufficient amount in controversy . . . must therefore shoulder a heavy burden." *Id.* "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul. Mercury*, 303 U.S. at 289 (citations omitted). Defendants seeking dismissal "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.'" *JTH Tax*, 624 F.3d at 638 (quoting *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) (internal quotation omitted)).

Here, the undersigned has considered the relief requested by Plaintiff, including the various items of personal property allegedly wrongfully retained by Defendant. Suppl. Compl. [DE-16] at

---

[4] Defendant does not appear to argue that there is no diversity of citizenship between the parties. *See* Def.'s Mem. [DE-31] at 4 ("Here, Plaintiff has failed to allege *any* amount in controversy. Thus, even if there is diversity of citizenship between Plaintiff and Defendant, the amount in controversy requirement has not been met."). Further, there appears to be no issue of diversity of citizenship where Defendant has not challenged Plaintiff's assertion that he is a citizen of Minnesota and Defendant is a North Carolina corporation with its principal place of business in Winston-Salem, North Carolina. Suppl. Compl. [DE-16] at 1 ¶ 1; [DE-37-4] (North Carolina Secretary of State records demonstrating that BB&T is incorporated in the state of North Carolina).

12

4 ¶ 12. Plaintiff's motion to amend to add "in excess of $75,000.00" to the requested relief has been granted, and additionally, Plaintiff has attached a price quotation for a replacement television antenna which estimates the cost of replacement (excluding installation) to be $73,999.20. TV Antenna Price Quote [DE-45-1] at 1-11. In light of this evidence and Plaintiff's good faith claim that the damages requested are in excess of $75,000.00, Defendant has not shown that there is "a legal certainty that the claim is really for less than the jurisdictional amount" sufficient to justify dismissal for failure to allege the amount in controversy pursuant to 28 U.S.C. § 1332(a). *St. Paul. Mercury*, 303 U.S. at 289 (citations omitted). Accordingly, the undersigned determines that the complaint alleges an adequate jurisdictional amount.

### 2. *Rooker-Feldman* Doctrine

Defendant argues that the *Rooker-Feldman* doctrine bars the court's exercise of jurisdiction over Plaintiff's second, third, fourth, fifth, sixth, and seventh claims. Def.'s Mem. [DE-31] at 5-6. In response, Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable because Plaintiff's alleged injury is distinct from the state court judgment and because Plaintiff's federal claim "alleges a prior injury that a state court failed to remedy."[5] Pl.'s Resp. [DE-38] at 6-7.

Plaintiff's claims at issue are as follows:

- **Second Claim: Fraud on the Court:** Plaintiff alleges that he did not default on the promissory note, and "[n]o substitute trustee was present at the foreclosure hearing; only Defendant's vice-president attended the hearing." Suppl. Compl. [DE-16] at 5 ¶ 14. Further, "Defendant did not inform the court of their change of substitute trustee to John D. Huddleston and the entire loan contract including loan modifications." *Id.* ¶ 15.

---

[5] In a separate filing, Plaintiff argues that the *Rooker-Feldman* doctrine cannot apply because the state court in the previous case (the Superior Court of Bertie County) lacked subject matter jurisdiction. Pl.'s Reply [DE-52] at 3-4. Plaintiff cites *Green v. Dixon*, 137 N.C. App. 305, 528 S.E.2d 51 (2000) in support of his argument, however *Green* addresses the principle of res judicata under North Carolina law, not the *Rooker-Feldman* doctrine, and is thus inapplicable here.

13

- **Third Claim: Absence of de novo Hearing**: Plaintiff alleges that he did not receive a de novo hearing, in violation of North Carolina statutes, and that Judge Grant did not make findings of fact and/or conclusions as required. *Id.* ¶ 16.

- **Fourth Claim: North Carolina Statutory Violations**: Plaintiff alleges that Defendant failed to produce a substitute trustee as required by North Carolina foreclosure law, and a substitute trustee failed to appear before Judge Grant in the Superior Court of Bertie County. *Id.* at 6 ¶ 17.

- **Fifth Claim: Breach of Contract**: Plaintiff alleges that no trustee was present at the foreclosure hearing in North Carolina Superior Court, in violation of the deed of trust. *Id.* ¶ 18.

- **Sixth Claim: Breach of Contract Under Modification of Agreement**: Plaintiff alleges that Defendant failed to remove Plaintiff's spouse from the promissory note and the deed of trust, as agreed to in a letter of agreement. *Id.* ¶ 19

- **Seventh Claim: Conflict of Interest**: Plaintiff alleges that at the time of the foreclosure hearing, Defendant's substitute trustee was also the attorney for the beneficiary who prosecuted the foreclosure action, in violation of North Carolina law requiring the trustee to be a neutral party. *Id.* ¶ 20.

Under the *Rooker-Feldman* doctrine, federal courts lack subject-matter jurisdiction to sit in appellate review of judicial determinations made in state courts. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). Jurisdiction to review such decisions lies with superior state courts and, ultimately, the United States Supreme Court. *See* 28 U.S.C. § 1257(a).

"The *Rooker-Feldman* bar extends not only to issues actually presented to and decided by a state court, but also to issues that are 'inextricably intertwined' with questions ruled on by a state court." *Brumby v. Deutsche Bank Nat'l Trust Co.*, No. 1:09-CV-144, 2010 WL 617368, at* 2, (M.D.N.C. Feb. 17, 2010) (unpublished) (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). "A federal claim is 'inextricably intertwined' with a state court decision where, 'in order to grant the

federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual.'" *Id.* (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (noting that *Rooker-Feldman* operates as a bar "[i]f the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling").

In 2005, the Supreme Court clarified the scope and application of the *Rooker-Feldman* doctrine and held that the jurisdictional limitation is "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Further,

> [the *Rooker-Feldman* doctrine does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Id.* at 293 (internal quotation & alteration omitted). "Under *Exxon*, then, *Feldman's* 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision," the federal claim is considered inextricably intertwined. *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).

Here, Plaintiff's second through seventh claims all relate to the foreclosure action, subsequent appeals, or actions taken by Defendant related to the promissory note prior to declaring

15

that Plaintiff was in default. Suppl. Compl. [DE-16] at 4-6 ¶¶ 12-20. Thus, to the extent that Plaintiff's claims are seeking relief stemming from the foreclosure order entered by the Bertie County Clerk of Court directing the foreclosure sale, these claims are barred by *Rooker-Feldman*. *See Pitts v. U.S. Hous. & Urban Dev.*, No. 5:12-CV-72-D, 2013 WL 214693, at *3 (E.D.N.C. Jan. 18, 2013) (unpublished) (holding that the *Rooker-Feldman* doctrine bars consideration of claims that challenge a North Carolina Clerk of Court's decision in a state foreclosure action); *Radisi v. HSBC Bank USA, Nat'l Ass'n*, No. 5:11-CV-125, 2012 WL 2155052, at *4 (W.D.N.C. June 13, 2012) (unpublished) (same).

In Plaintiff's second claim, he states that he was not in default on the promissory note. Suppl. Compl. [DE-16] at 5 ¶ 14. However, whether Plaintiff was in default at the time of foreclosure was precisely what the state court decided in the foreclosure action. *See Radisi*, 2012 WL 2155052, at *4 ( holding that Plaintiff's claims were barred by *Rooker-Feldman* where Plaintiff argued that Defendant fraudulently brought a foreclosure action and was not the valid holder of the promissory note at issue). "That the party seeking to foreclose is the lawful holder of a valid debt is one of the elements a North Carolina court must find to authorize foreclosure." *Id.* (citing N.C. Gen. Stat. § 45-21.16(d)(i)). The statute provides that the clerk of court must find "the existence of (I) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, [and] (iv) notice to those entitled" in order to authorize the foreclosure pursuant to a power of sale. N.C. Gen. Stat. § 45-21.16(d) (2011).[6] Further, "[t]he act of the clerk in so finding or refusing to so find is a judicial act and may be appealed to the judge of the district

---

[6] As the events relating to the order of possession and Defendant's alleged wrongful retention of Plaintiff's personal property occurred in 2011, the undersigned will consider the version of the North Carolina General Statutes in effect in 2011.

or superior court having jurisdiction at any time within 10 days after said act." *Id.* § 45-21.16(d1). Accordingly, whether Plaintiff was in default on the promissory note was determined by the state court during the foreclosure proceeding and *Rooker-Feldman* bars the court's consideration of Plaintiff's claim alleging that he was not in default.

In his second, fourth, fifth, and sixth claims, Plaintiff challenges actions taken by the Defendant prior to declaring that Plaintiff was in default and during the foreclosure action, such as failing to present a trustee at the foreclosure hearing, failing to inform the court of loan modifications, failing to inform the court of the substitute trustee, and failing to remove Plaintiff's spouse from the promissory note. Suppl. Compl. [DE-16] at 5-6 ¶¶ 14-15, 17-19. Plaintiff's opportunity to challenge these actions came during the state court action. *Radisi*, 2012 WL 2155052, at *4 ("Plaintiff argues that Defendants committed fraudulent actions before the foreclosure action was ordered, but Plaintiff's opportunity to show that came in the state court action.") (citing *Dillard v. Bank of N.Y.*, No. 11-1379, 2012 WL 1094833 (10th Cir. Apr. 3, 2012) (unpublished) (applying *Rooker-Feldman* to dismiss a claim related to improper documents and deceptive representations in a foreclosure proceeding)); *see also Renfrow v. Fremont Home Loan Trust*, No. 5:12-CV-565-FL, 2013 WL 3475300 (E.D.N.C. July 10, 2013) (unpublished).

Plaintiff also raises alleged violations of North Carolina law that occurred during the foreclosure proceeding and subsequent appeal in his third and seventh claims. Suppl. Compl. [DE-16] at 5-6 ¶¶ 16, 20. These claims, however, are "inextricably intertwined" with the state-court foreclosure action because Plaintiff is seeking "redress in the federal district court for the injury cause by the state-court decision." *Davani*, 434 F.3d at 719. Accordingly, in considering whether these alleged statutory violations occurred, this court would necessarily be asked to "determine that

17

the [state] court judgment was erroneously entered," which is exactly what the *Rooker-Feldman* doctrine prohibits. *Brumby*, 2010 WL 617368, at *2; *see also Radisi*, 2012 WL 2155052, at *4 ("Plaintiff cannot prevail on his fraud claim without obtaining an order that would negate or assign error to the state court's judgment. Even if the superior court erred in its judgment, this Court may not sit in appellate review of that judgment.").

"The *Rooker-Feldman* doctrine is particularly relevant when there is a means of appeal provided by the state." *Radisi*, 2012 WL 2155052, at *4. Here, Plaintiff discusses appealing the foreclosure in the Superior Court and in the North Carolina Court of Appeals, both of which affirmed the foreclosure. Suppl. Compl. [DE-16] at 2-3 ¶¶ 5, 7. Plaintiff's second, third, fourth, fifth, sixth, and seventh claims all should have been raised during the state court proceedings, and Plaintiff is essentially asking this court to engage in improper appellate review of the state court's actions during the foreclosure proceeding. Accordingly, the *Rooker-Feldman* doctrine bars review of these claims.[7] Thus, it is recommended that Defendant's Motion to Dismiss Plaintiff's second, third, fourth, fifth, sixth, and seventh claims for lack of subject matter jurisdiction due to *Rooker-Feldman* [DE-30] be granted.

**B.     Motion to Dismiss–Failure to State a Claim**

Defendant argues that Plaintiff's first, second, third, fourth, fifth, sixth, seventh, and eighth claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mem. [DE-31] at 6-9. In response, Plaintiff's arguments primarily address his motions to amend the complaint. *See* Pl.'s Resp. [DE-38]. As discussed above, the *Rooker-*

---

[7] Plaintiff's second proposed amended supplemental complaint [DE-43-1] contains minor revisions to these claims, but the proposed amendments do not alter the substance of Plaintiff's allegations and would not alter the result. Thus, to the extent Plaintiff is seeking to amend these claims, his motion is denied as futile because the *Rooker-Feldman* doctrine still bars the court's exercise of jurisdiction over these claims as amended.

18

*Feldman* doctrine bars the court's exercise of jurisdiction over Plaintiff's second, third, fourth, fifth, sixth, and seventh claims. Accordingly, the court will not consider the merits of those claims pursuant to Rule 12(b)(6). Further, Plaintiff's first claim for conversion is impacted by the first and third motions to amend and will be address below in conjunction with the motions to amend. *See* Pl.'s First Mot. to Amend [DE-37]; Pl.'s Third Mot. to Amend [DE-44].

In Plaintiff's eighth claim for relief, he alleges that "Defendant violated due process of law by not providing Plaintiff with discovery of documents. Although, Plaintiff requested discovery, discovery was not addressed or was ignored by the Honorable Grant of North Carolina Superior Court." Suppl. Compl. [DE-16] at 7 ¶ 21. Defendant argues that Plaintiff's eighth claim should be dismissed because the cause of action does not exist and because Defendant is not a governmental entity and was not acting under color of state law during the foreclosure. Def.'s Mem. [DE-31] at 8-9.

Here, Plaintiff argues that his due process rights were violated when Defendant allegedly withheld discovery documents. Suppl. Compl. [DE-16] at 7 ¶ 21. Construing Plaintiff's claim liberally, Plaintiff appears to be alleging a violation of 42 U.S.C. § 1983. Section 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, section 1983 is not a "source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citations omitted). Thus, to state a cause of action under § 1983, a plaintiff must allege facts indicating a deprivation of rights guaranteed by the

19

Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 49-50 (1988).

Even construing Plaintiff's allegations in the light most favorable to him and assuming Plaintiff has sufficiently asserted a constitutional deprivation, Plaintiff's eighth claim fails to state a claim under § 1983 because there is no allegation that Defendant is acting under the color of state law. Defendant is a private entity, and there are no facts alleged in the complaint that could be read to suggest that Defendant was acting under the color of state law. *See Rodgers v. Waste Indus., Inc.*, No. 4:12-CV-294-FL, 2013 WL 4460265, at *4 (E.D.N.C. Aug. 19, 2013) (unpublished) (explaining that private action may be found to constitute state action "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.") (quoting *Andrews v. Fed. Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993)), *aff'd*, 553 F. App'x 332 (4th Cir. 2014); *Philips v. Pitt Cnty. Mem'l Hosp.*, 503 F. Supp. 2d 776, 780 (E.D.N.C. 2007) ("Liability under Section 1983 extends only to persons acting under color of state law . . . ."), *aff'd*, 572 F.3d 176 (4th Cir. 2009). "The critical inquiry in each case is whether the private actor's conduct was fairly attributable to the state." *Rodgers*, 2013 WL 4460265, at *5 (citing *Mentavlos v. Anderson*, 249 F.3d 301, 313 (4th Cir. 2001)). Here, Plaintiff's complaint is devoid of any allegation to support a finding that Defendant's alleged failure to provide discovery documents is attributable to the state. Accordingly, it is recommended that Defendant's motion to dismiss Plaintiff's eighth claim pursuant to Rule 12(b)(6) for failure to state a claim [DE-30] be granted.

C.     **Motions to Amend**

1.     **Tenth Claim–Lack of Standing and Lack of Jurisdiction**

In Plaintiff's third motion to amend, Plaintiff seeks to add a tenth claim "to reflect lack of

standing and lack of jurisdiction at the Superior Court of Bertie County before Judge Cy Grant."

Pl.'s Third Mot. to Amend [DE-44] at 1. In response, Defendant argues that this claim is futile as

it would be subject to dismissal under Rule 12(b)(6) as the action does not exist. Def.'s Resp. [DE-

49] at 5-6. In his reply, Plaintiff argues that the lack of jurisdiction and lack of standing in the case

in Bertie County Superior Court was one of the main reasons he filed the instant federal case. Pl.'s

Reply [DE-52] at 5-6.

> Plaintiff's proposed tenth claim states as follows:
>
> The Superior Court of Bertie County did not have authority to grant foreclosure on
> Plaintiff's property because the Defendant Branch Banking and Trust Company did
> not have standing in accordance with the North Carolina foreclosure statute. Also
> under North Carolina law, the beneficiary of a deed of trust could not bring the
> foreclosure action. Yet Ms. Kristen Miller represented the Defendant Branch
> Banking and Trust Company at the alleged de novo hearing before Judge Cy Grant
> at Plaintiff's appeal of the foreclosure decision rendered by the clerk of court.

Second Prop. Am. Suppl. Compl. [DE-43-1] at 9-10 ¶ 28.

As a general rule, "leave to amend a pleading should be denied . . . [when] the amendment

would be futile." *Edwards*, 178 F.3d at 242. "Futility is apparent if the proposed amended

complaint fails to state a claim under the applicable rules and accompanying standards: '[A] district

court may deny leave if amending the complaint would be futile—that is, if the proposed amended

complaint fails to satisfy the requirements of the federal rules.'" *Katyle v. Penn Nat. Gaming, Inc.*,

637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root,

Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted)). Here, the *Rooker-*

*Feldman* doctrine bars the court's exercise of jurisdiction over Plaintiff's proposed tenth claim, and as such, the amendment would be futile. Plaintiff is asking this court to consider whether the North Carolina court had authority to order the foreclosure of Plaintiff's property, due to alleged issues of standing and jurisdiction in the foreclosure proceedings. Second Prop. Am. Suppl. Compl. [DE-43-1] at 9-10 ¶ 28. In considering these issues, however, this court would be asked to "determine that the [state] court judgment was erroneously entered," which is exactly what the *Rooker-Feldman* doctrine prohibits. *Brumby*, 2010 WL 617368, at *2; see also *Radisi*, 2012 WL 2155052, at *4 ("Plaintiff cannot prevail on his fraud claim without obtaining an order that would negate or assign error to the state court's judgment. Even if the superior court erred in its judgment, this Court may not sit in appellate review of that judgment."). Thus, as the *Rooker-Feldman* doctrine bars the court's exercise of jurisdiction over Plaintiff's proposed tenth claim for lack of jurisdiction and standing, Plaintiff's third motion to amend [DE-45] as to the tenth claim is denied.

### 2.    First Claim–Conversion and Ninth Claim–Trespass to Chattels

Plaintiff's third motion to amend seeks to amend his existing first claim for conversion and add a ninth claim for trespass to chattels. Pl.'s Third Mot. to Amend [DE-44] ("Please take notice that Plaintiff has brought this motion to amend his complaint by reciting facts and elements of conversion in Count I and Count IX which is trespass to chattel."). Defendant argues in opposition that Plaintiff's proposed amendment to the conversion claim has failed to allege facts to show that Defendant's possession or disposition of Plaintiff's personal property was wrongful or unlawful, and thus, Plaintiff's proposed amendment should be denied as futile and Plaintiff's original claim for conversion should be denied under Rule 12(b)(6) for failure to state a claim. Def.'s Resp. [DE-49] at 3-5. Further, Defendant argues that Plaintiff's proposed ninth claim for trespass to chattels should

22

be denied as futile as Plaintiff has not alleged a right to present possession or a right to immediate

actual possession of the personal property at issue. *Id.* at 5-6. In his reply, Plaintiff argues that he

has sufficiently plead the elements of conversion, and that Defendant failed to follow the North

Carolina statutory scheme that applies to personal property on the premises of a foreclosed property.

Pl.'s Reply [DE-52] at 1-3.

> Plaintiff's proposed amended first claim for conversion states as follows:

> On July 11, 2011, Defendants retained Plaintiff's personal property consisting of: Radio transmitters (3); T.V. transmitter (1); Satellite dishes (3); Board processors; Microphones (more than 5); Audio players (5-10); Microphone stands; TV Monitors (4+); Audio speakers (4+); files including computer hardware and software; file cabinets; business documents and files. These are just some of the items that were not stored or kept by the Sheriff of Bertie County, but remained on the premises with the Defendants, BB&T, Atlas NC I SPE, LLC.

> While the Sheriff of Bertie County executed an Order for Possession on the Plaintiff at his business located at Highway 17 in Windsor, North Carolina, the Defendant kept possession of the above personal property set forth in paragraph 13 of this Supplemental Complaint. The Sheriff's order of possession which is attached and incorporated into this proposed amended complaint does not include possession of any personal property. The order of possession rather only directs the Defendant, Atlas, to take possession of the real property located at Highway 17 in Windsor, North Carolina.

> Plaintiff understands that Defendant Atlas sold the personal property, that it wrongfully took possession of at the direction of Defendant, Branch Banking and Trust Company, to a Mr. Bertrand Russell. Plaintiff understands further that his personal property was then sold by a realtor, Mr. Jeff Daniels, at Defendant Branch Banking and Trust Company's direction. The personal property identified in above paragraph 13 of this proposed amended complaint was possessed unlawfully By Defendant, Atlas, as well as Defendant branch Banking and Trust Company, without the consent of Plaintiff. Neither the Sheriff of Bertie County nor the judge of Superior Court of Bertie County ordered Atlas to take possession of the personal property belonging to Plaintiff.

Second Prop. Am. Suppl. Compl. [DE-43-1] at 5-6 ¶¶ 15-17. Plaintiff's original first claim for

conversion states as follows:

On July 11, 2011, Defendant retained Plaintiff's personal property consisting of: Radio transmitters (3); T.V. transmitter (1); Satellite dishes (3); Board processors; Microphones (more than 5); Audio players (5-10); Microphone stands; TV Monitors (4+); Audio speakers (4+). These are just some of the items that were not stored or kept by the Sheriff of Bertie County, but remained on the premises with the Defendant, BB&T.

While the Sheriff of Bertie County executed an Order for Possession on the Plaintiff at his business located at Highway 17 in Windsor, North Carolina, the Defendant kept possession of the above personal property set forth in paragraph 12 of this Supplemental Complaint.

Suppl. Compl. [DE-16] at 4-5 ¶¶ 12-13. Plaintiff's proposed ninth claim for trespass to chattels

states as follows:

Defendant, Atlas, had possession of Plaintiff's personal property when the Sheriff of Bertie County arrived on the premises of WBTE radio station which had been foreclosed upon by Defendant, Branch Banking and Trust Company. The sheriff did not remove or store the personal property according to NCC Statute 42-25.9 and 42-36.2. According to Mr. Jeff Daniels, Defendant, Branch Banking and Trust Company, told him to take everything which included taking the personal property on the premises.

Plaintiff had at least constructive possession of the personal property when it was inside the premises which had been foreclosed upon since Defendant Atlas did not have legal authority to take possession of the personal property. The location of Plaintiff's personal property or its whereabouts is unknown and more than likely has been sold by Defendants.

Second Prop. Am. Suppl. Compl. [DE-43-1] at 9 ¶¶ 26-27. While Plaintiff's proposed claims

include allegations related to the proposed additional Defendant, Atlas, for the reasons that follow,

Plaintiff's claims fail regardless of the identity of the Defendant or Defendants.

North Carolina law sets out a procedure governing the disposition of personal property

remaining on the premises after a foreclosure action. Pursuant to N.C. Gen. Stat. § 45-21.29(k), the

Clerk of Superior Court may issue an order for possession in favor of the purchaser and against the

party in possession. N.C. Gen. Stat. § 45-21.29(k) (2011). The party in possession of the property

24

must receive ten days' notice prior to the clerk of court issuing the order for possession. *Id.* § 45-21.29(k)(5). Further,

> [a]n order for possession issued pursuant to G.S. 45-21.29(k) shall be directed to the sheriff and shall authorize the sheriff to remove all occupants and their personal property from the premises and to put the purchaser in possession, and shall be executed in accordance with the procedure for executing a writ or order for possession in a summary ejectment proceeding under G.S. 42-36.2. The purchaser shall have the same rights and remedies in connection with the execution of an order for possession and the disposition of personal property following execution as are provided to a landlord under North Carolina law[.]

*Id.* § 45-21.29(*l*). Prior to removing an occupant's personal property pursuant to an order for possession, the sheriff must give the occupant notice of the time the order of possession will be executed. N.C. Gen. Stat. § 42-36.1(a). This notice must also "inform the [occupant] that failure to request possession of any property on the premises within 10 days of execution may result in the property being thrown away, disposed of, or sold." *Id.* § 42-36.1(d). When the sheriff removes the property pursuant to an order for possession, if the occupant fails or refuses to take possession of the personal property, the sheriff may either store the property in a warehouse or leave the property on the premises if the purchaser does not wish to advance the costs of delivery and storage. *Id.* § 42-36.1(b). "[W]ithin 10 days of the [purchaser's] being placed in lawful possession by execution of a writ of possession and upon the [occupant's] request within that 10-day period, the [purchaser] shall release possession of the property to the [occupant] during regular business hours or at a time agreed upon." *Id.* "After the expiration of the 10-day period, the [purchaser] may throw away, dispose of, or sell the property in accordance with the provisions of G.S. § 42-25.9(g)." *Id.*

Here, Plaintiff has filed a copy of the Application for Writ of Possession completed by Atlas, filed on May 19, 2011. [DE-45-1] at 17. The application states that "Atlas has fully complied with the provisions of N.C.G.S. § 45-21.29" and requests the issuance of an order "directing the Sheriff

25

of Bertie County to remove anyone on the premises, with their personal property from such premises." *Id.* Plaintiff has also filed a copy of the order of possession issued by the Clerk of Superior Court of Bertie County, which states that Plaintiff, along with others, has wrongfully retained possession of the real property and "[t]he Substitute Trustee has complied with the provisions of N.C. General Statutes § 45-21.1 *et seq.*" [DE-45-1] at 18. The order of possession concludes by directing the Sheriff of Bertie County to serve the order "upon the current occupant and . . . remove any and all parties and their personal property from the premises and place Atlas in possession." *Id.* at 19.

Under North Carolina law, conversion consists of "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008) (citation omitted). "[T]wo essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Id.*, 665 S.E.2d at 489 (citation omitted). Additionally, to show trespass to chattels in North Carolina, the plaintiff must show that he had "either actual or constructive possession of the personalty or goods in question at the time of the trespass, and that there was an unauthorized, unlawful interference or dispossession of the property." *Fordham v. Eason*, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999) (internal citations omitted). In both of these causes of action, Plaintiff must demonstrate that Defendant took an unauthorized or unlawful action with regard to the personal property at issue.

The North Carolina Court of Appeals has specifically considered whether storing personal property after execution of an order for possession constituted conversion. *Smithers v. Tru-Pak*

*Moving Sys., Inc.*, 121 N.C. App. 542, 468 S.E.2d 410 (1996). In that case, when the sheriff executed the order for possession pursuant to N.C. Gen. Stat. § 45-21.29, the plaintiffs did not remove their personal property from the premises. *Id.* at 545, 468 S.E.2d at 412. The purchaser of the real property hired the defendant to remove and store plaintiffs' personal property. *Id.* The plaintiffs sued the defendant for conversion based on the defendant's removal and storage of the personal property. *Id.* at 551, 468 S.E.2d at 415. The court determined, however, that the sheriff and the defendant complied with the statutory provisions in sections 45-21.29(*l*) and 42-36.2(b). *Id.* Accordingly, the court held that because the "defendant obtained plaintiffs' personal property in accord with these statutorily mandated procedures, it did not convert plaintiffs' property by removing and storing it." *Id.*

*Smithers* is factually different from the instant case because here, Plaintiff does not allege that either BB&T or Atlas stored his personal property elsewhere. However, the reasoning of the *Smithers* court still applies. In *Smithers*, the defendant did not take unauthorized assumption over the plaintiffs' personal property for purposes of conversion. *Id.* Instead, the court determined that because the defendant complied with the statutory provisions, it was lawfully exercising control over the personal property plaintiffs had refused to remove from the premises. *Id.* Here, Plaintiff has failed to show that the purchasing party (be it Atlas or BB&T) acted wrongfully or unlawfully with regard to the personal property in order to constitute either conversion or trespass to chattels.

The state court documents filed by Plaintiff in this case demonstrate that in applying for the order for possession, Atlas complied with the provisions on N.C. Gen. Stat. § 45-21.29, which included giving notice to Plaintiff of the order for possession. [DE-45-1] at 18. Further, before serving the order for possession on Plaintiff as the occupant of the property, the sheriff was required

27

to provide notice warning Plaintiff that "failure to request possession of any property on the premises within 10 days may result in the property being thrown away, disposed of, or sold." N.C. Gen. Stat. § 42-36.2(d). Plaintiff has made no allegation that the sheriff failed to provide him with this notice. *See* Suppl. Compl. [DE-16]; Second Prop. Am. Compl. [DE-43-1]. While Plaintiff does state that "[t]he sheriff did not remove or store the personal property according to NCC Statute 42-25.9 and 42-36.2," the North Carolina statutes as discussed above do not require the sheriff to do this. The statutes provide that the sheriff may leave the personal property on the premises or direct the purchaser to have the property stored elsewhere. *See* N.C. Gen. Stat. §42-36.2(b).

Plaintiff's only argument as to notice is raised in his reply, where he states that "written notice from the owner (Defendant Atlas) was not given to the Plaintiff as required by N.C.G.S. 42-36.2(b)." Pl.'s Reply [DE-52] at 2. Section 42-36.2(b), however, does not require the purchaser of the property to give notice to the occupant. Instead, the statute places the responsibility on the occupant to request the personal property from the purchaser. N.C. Gen. Stat. § 42-36.2(b) ("[W]ithin 10 days of the [purchaser's] being placed in lawful possession by execution of a writ of possession and upon the [occupant's] request within that 10-day period, the [purchaser] shall release possession of the property to the [occupant] during regular business hours or at a time agreed upon."). Here, Plaintiff has failed to allege that he requested his personal property during the statutorily-mandated time, instead arguing that "Defendant Atlas never offered to release the personal property to the tenant/Plaintiff." Pl.'s Reply [DE-52] at 3. North Carolina law requires that Plaintiff request his personal property during a specified time, which he failed to do here. Plaintiff is essentially arguing that the purchaser was required to affirmatively contact him and ask him to retrieve his personal property, which the law simply does not require. Thus, if Atlas or BB&T sold

or disposed of the property after Plaintiff failed to request it during the statutory time period, they did so lawfully.

Accordingly, as the facts alleged by Plaintiff fail to show noncompliance with the statutory procedure as to the execution of the order for possession, any Defendant (be it Atlas or BB&T) who was granted possession of the real property did not unlawfully or wrongfully possess Plaintiff's personal property left on the premises. Further, the facts fail to show that Plaintiff had a right to regain his personal property from the purchaser, as he failed to request the personal property as required by the statutes. Plaintiff cannot establish either conversion or trespass to chattels under these facts because Plaintiff cannot show "an unauthorized assumption" of ownership necessary to a conversion claim, *Bartlett Milling Co.*, 192 N.C. App. at 86, 665 S.E.2d at 488, nor can he show "an unauthorized, unlawful interference or dispossession of the property" required for a trespass to chattels claim, *Fordham*, 351 N.C. at 155, 521 S.E.2d at 704. Because the purchaser (be it Atlas or BB&T) complied with the North Carolina statutory scheme relating to personal property remaining on foreclosed real property, there was no wrongful or unauthorized interference with Plaintiff's personal property. Thus, Plaintiff's third motion to amend [DE-44] to add a ninth claim for trespass to chattels and to amend the first claim for conversion is denied as futile for failure to state a claim, and it is recommended that Plaintiff's conversion claim be dismissed.

### 3. First and Second Motions to Amend to add Atlas as a Party

The only remaining issue before the court is whether Plaintiff should be allowed to amend his complaint to add Atlas as a party. First Mot. to Amend [DE-37]; Second Mot. to Amend [DE-43]. As discussed above, it is recommended that all of Plaintiff's claims be dismissed. For the claims that Plaintiff sought to amend to factually include Atlas as a Defendant (the claims for

29

conversion and trespass to chattels), as discussed above, Plaintiff failed to state a claim for relief regardless of whether Atlas or BB&T was named as the Defendant. Accordingly, where it is recommended that all of Plaintiff's claims be dismissed, allowing Plaintiff to add Atlas as a party would be futile. *See Edwards*, 178 F.3d at 242. Plaintiff's motions to amend to add Atlas as a party [DE-37, -43] are thus denied.

## V. CONCLUSION

For the reasons stated above, it is ORDERED that Plaintiff's First Motion to Amend [DE-37] is GRANTED IN PART and DENIED IN PART, and Plaintiff's Second and Third Motions to Amend [DE-43, -44] are DENIED. It is RECOMMENDED that Defendant's Motion to Dismiss [DE-30] be GRANTED and Plaintiff's second through seventh claims in the Supplemental Complaint [DE-16] be dismissed for lack of subject matter jurisdiction due to the *Rooker-Feldman* doctrine and Plaintiff's first and eighth claims be dismissed for failure to state a claim under Rule 12(b)(6).

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties' counsel. Each party shall have until **September 4, 2015** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **7 days** of the filing of objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This, the 21st day of August 2015.

Robert B. Jones, Jr.
United States Magistrate Judge